IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON CRIDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:22-CV-2415-D |
| | § | |
| EUGENIA FOUST, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Brandon Crider ("Crider") sues defendant Eugenia Foust ("Foust"), alleging

several violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101 *et seq.*, and the underlying regulations in 28 C.F.R. pt. 36 that implement the ADA.

Foust moves to dismiss Crider's first amended complaint ("FAC") under Fed. R. Civ. P.

12(b)(1) for lack of subject matter jurisdiction.[1]  For the reasons that follow, the court denies

_____

[1] Foust's motion is styled as a motion to strike Crider's FAC under Rule 12(f).  But the prayer for relief asks the court to dismiss the complaint for lack of subject matter jurisdiction, and the docket entry—which is attributed to one of Foust's attorneys of record, not the clerk of court—is entitled "Second MOTION to Dismiss for Lack of Jurisdiction *and Objection to Amended Complaint*."  ECF No. 22 (italicized font in original).

Rule 12(f) motions are "viewed with disfavor" and should be granted only in exceptional circumstances.  *See, e.g.*, *NexBank, SSB v. Bank Midwest, N.A.*, 2012 WL 4321750, at *2 (N.D. Tex. Sept. 21, 2012) (Fitzwater, C.J.).  "Rule 12(f) motions … should be granted only when the pleading to be stricken has no possible relation to the controversy." *SEC v. Faulkner*, 2019 WL 2515000, at *1 (N.D. Tex. June 18, 2019) (Fitzwater, J.) (internal quotation marks omitted).  "The decision to grant a motion to strike is within the court's discretion."  *NexBank*, 2012 WL 4321750, at *2 (citing *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.)); *see also In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979) ("The trial court has ample discretion when considering a Rule 12(f) motion." (internal quotation marks omitted)).  To the extent that

the motion on the condition that Crider files a second amended complaint that is based on an acceptable verification, such as on oath or penalty of perjury, and that specifies the parts that are based on his personal knowledge.

I

This lawsuit arises from Crider's two unsuccessful attempts to visit the Swiss Donut, a business that Foust allegedly owns and operates ("the Property").[2]  According to the FAC, Crider "is an individual with disabilities as defined by the ADA" and "uses a wheelchair for mobility purposes."  FAC ¶¶ 4, 6.  Crider asserts that his access to the Property has been curtailed by several physical barriers, such as a lack of designated van-accessible parking.

According to the FAC, the Property is situated within 30 miles of Crider's residence, and he frequently travels in the area directly surrounding the Property and visits nearby businesses.  Crider alleges that he intends to return to the Property in the future, so long as he is physically able.[3]  Without precisely pleading when or under what circumstances he

_____

Foust has moved to strike the FAC, she has not satisfied this heavy burden, and her motion is denied in this respect.

[2]Because Foust's Rule 12(b)(1) motion presents a factual challenge to standing, *see infra* § II, the court need not presume that Crider's well-pleaded allegations are true.  *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).  Instead, the court recounts the facts based on the court's own weighing of the evidence presented and the allegations made.  *Id.* (noting that the court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts").

[3]The FAC alleges that Crider visited the Property a second time shortly before filing his FAC.

- 2 -

hopes to return, Crider specifically alleges that he "intends on revisiting the [Property] within six months . . . or sooner, as soon as the barriers to access detailed in [his] Complaint are removed."  FAC ¶ 15.  He also asserts that his "day-to-day life has been negatively affected by the barriers to entry at the [Property]" because he frequently stops at local businesses while traveling in the area around his residence.  *Id*. ¶¶ 11-12, 19.

After Crider filed the instant suit seeking injunctive relief, Foust moved to dismiss for lack of subject matter jurisdiction, contending that Crider lacks standing.[4]  The court granted the motion, concluding that it presented a factual attack on Crider's complaint and that Crider had not established, "through some evidentiary method," that he satisfied the elements of standing.  *See Hunter v. Branch Banking & Tr. Co.*, 2013 WL 4052411, at *2 (N.D. Tex. Aug. 12, 2013) (Fitzwater, C.J.).  But the court also allowed Crider to replead in order to provide admissible evidence of standing.  *See Crider v. Foust*, 2023 WL 173140, at *2 (N.D. Tex. Jan. 12, 2023) (Fitzwater, J.).  Crider then filed the instant FAC, which is largely identical to his complaint with two notable exceptions: the FAC refers to a second visit by Crider to the Property, and the final page the FAC contains the following "Oath," which is subscribed and sworn to before a notary public: "After being duly sworn, the Plaintiff, Brandon Shane Dunn Crider, makes oath that the contents of the above-captioned Complaint are true and correct to the best of my information, knowledge, and belief."  FAC at 18.  The

---

[4]The motion also asked the court to dismiss pursuant to Rule 12(b)(6) for failure to state a claim on which relief could be granted.  The court declined to reach that issue.  *Crider v. Foust*, 2023 WL 173140, at *2 n.5 (N.D. Tex. Jan. 12, 2023) (Fitzwater, J.).

Oath is signed by Crider before a notary public, who also signed and affixed his notary seal, attesting that Crider had sworn to and subscribed the oath before the notary. *Id.*

Foust now moves to dismiss and strike the FAC. Crider opposes the motion. The court is deciding the motion on the briefs, without oral argument.

## II

Foust again contends that Crider lacks standing. Standing is an issue of subject matter jurisdiction, and, as courts of limited jurisdiction, federal courts are obligated "to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As the party seeking to invoke this court's jurisdiction, Crider bears the burden of establishing that he has standing. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

A Rule 12(b)(1) motion can mount either a facial or factual challenge to standing. *See Hunter*, 2013 WL 4052411, at *2. Foust's motion to dismiss asks the court to consider Crider's prior ADA litigation history. This is sufficient to render her attack a factual rather than a facial one. *See id.* Crider is thus required to "submit facts through some evidentiary method" in order to prove "by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Id.*

When a Rule 12(b)(1) motion to dismiss presents a factual challenge to standing, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal quotation marks omitted) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "[N]o presumptive truthfulness attaches to plaintiff's allegations,

- 4 -

and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413.

III

The court must first determine whether Crider has presented admissible evidence in response to Foust's factual challenge to standing. Crider relies only on his verified FAC.

A

Statements made in unverified pleadings are not admissible evidence. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.). But "verified pleadings may in some circumstances be treated as affidavits in support of a motion for summary judgment." *Fowler v. S. Bell Tel. & Tel. Co.*, 343 F.2d 150, 154 (5th Cir. 1965). In the context of a summary judgment motion, such pleadings must satisfy the requirements of Rule 56. *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987).

Although the court has found no authority for applying this rule to a Rule 12(b)(1) motion to dismiss, the requirement that factual challenges to standing must be refuted through some "evidentiary method," *Hunter*, 2013 WL 4052411, at *2, suggests that summary judgment evidence rules offer useful guidance. This is supported by the conclusion that affidavits are one "evidentiary method" by which parties can establish certain facts. *See id*. And a verified pleading that satisfies the requirements of Rule 56 can be treated as the functional equivalent of an affidavit. *See Fowler*, 343 F.2d at 154.

Accordingly, the court will consider Crider's FAC as admissible evidence akin to an

- 5 -

affidavit if it is properly verified and satisfies the other requirements of Rule 56.

B

Rule 56(c)(4) requires that an affidavit be based on personal knowledge, that it set forth facts that would be admissible in evidence, and that it affirmatively show that the affiant is competent to testify to those facts. *Lodge Hall Music*, 831 F.2d at 80 (citing Rule 56(c)(4), formerly Rule 56(e)).   A pleading can only be treated as an affidavit if it is "verified."   *Id.*   A complaint is "verified" if it is supported, *inter alia*, by an oath or by an unsworn declaration under penalty of perjury.   *See* 28 U.S.C. § 1746; *see also Broadspire Servs, Inc. v. Wells*, 2022 WL 18587853, at *2 n.1 (N.D. Tex. Nov. 3, 2022) (Hendrix, J.) (noting that a "verified complaint . . . must include indicia of a sworn oath before a notary . . ..").

The FAC includes an oath stating that Crider was duly sworn and made oath that the contents of the FAC were true and correct to the best of his information, knowledge, and belief.   The court concludes that this oath is sufficient to qualify the FAC as a verified complaint, so that it can be treated as an affidavit, provided it complies with the requirements of Rule 56.

Foust maintains that the FAC does not qualify as an affidavit because it is based in part on information and belief, and Rule 56 dictates that affidavits must be based on personal knowledge.   Foust is correct that "affidavits, *or portions thereof*, that are not based on personal knowledge or that are based merely on information and belief" are  not competent evidence. *Ferguson v. GB Tools and Supplies, Inc.*, 2009 WL 10703178, at *2 (N.D. Tex.

Aug. 17, 2009) (Cummings, J.).  But this does not mean that the court must disregard the entirety of an affidavit when only part of it is based upon information and belief, as is apparently the case here.  *See Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994)*; see also Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) ("The court should disregard only the inadmissible portions of a challenged affidavit.").  Accordingly, Crider's verified complaint is not deficient to establish standing solely because portions are based on information and belief rather than personal knowledge.

It is unclear, however, which parts of the FAC are based on information and belief and which parts are based on Crider's personal knowledge.  The oath contained in the FAC attests to the truth and correctness of its contents "to the best of [Crider's] information, knowledge, and belief," collectively.  FAC at 18.  Crider does not differentiate among the parts of his attestation that are based on information and belief and the parts that are based on personal knowledge.

It seems plausible that substantial parts of the FAC that are material to Crider's proof of standing are within his personal knowledge.  For instance, he would appear to have personal knowledge about his intentions to return to the Property.  But his assertion that he would discover other ADA violations if he were physically able to enter the Property seems to be based at this time only on information and belief.

The court cannot simply venture a guess as to which allegations of the FAC are based on Crider's personal knowledge and which are not.  And Crider, as the party with the burden of proof who is relying only on a verified complaint to prove standing, is obligated to

establish which parts are based on personal knowledge. Accordingly, although the FAC is supported by Crider's oath, it is defective as a Rule 56-type affidavit because it does not specify which allegations are based on personal knowledge.

### C

Although the FAC is defective as a verified complaint that does not specify the parts that are based on personal knowledge, the court will permit Crider to correct this defect. *See, e.g.*, *Brady v. Blue Cross & Blue Shield of Tex., Inc.*, 767 F. Supp. 131, 135-36 (N.D. Tex. 1991) (Fitzwater, J.) (permitting summary judgment nonmovant who submitted unsworn interrogatory answers to file supplemental evidence). And in addressing Foust's challenge to standing, the court will assume that Crider has presented opposing evidence in a form that satisfies Rule 56.

### IV

### A

The doctrine of standing has both constitutional and prudential elements. *Hunter*, 2013 WL 4052411, at *2. To show that he has constitutional standing, Crider must "establish three elements: (1) injury in fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision." *Id.* (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009)). The injury in fact must be "particularized," meaning that it must impact the plaintiff in some unique, individualized way. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). In cases invoking the ADA, the plaintiff must make

detailed allegations regarding the impact that the purported violations will have on the plaintiff's daily life. *Frame v. City of Arlington*, 657 F.3d 215, 235-36 (5th Cir. 2011) (en banc). "To have standing to obtain injunctive relief, the plaintiff must also show that [he] is likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

There are two ways for an ADA claimant to establish the first element of constitutional standing—injury in fact—when seeking injunctive relief. First, he may show that he has concrete intentions to return to the defendant's property in the future and that he "therefore faces a real and immediate threat that [he] will again be harmed by ADA non-compliance." *Hunter*, 2013 WL 4052411, at *2. This "intent to return" approach requires courts to evaluate the following "non-exclusive factors to determine whether the plaintiff … intends to return: (1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." *Id.* Some courts have also considered the plaintiff's prior litigation history. *Id.* (collecting cases).

The second recognized method by which an ADA claimant can establish injury-in-fact is "for the plaintiff to show that [he] is continually injured by being deterred from making use of the allegedly noncompliant public accommodation." *Id.* at *3. Under this theory, "a plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store." *Id.* (quoting *Chapman v. Pier 1 Imps., Inc.*, 631 F.3d 939, 950 (9th Cir.

- 9 -

2011)) (internal quotation marks and citation omitted).  This theory arises from the ADA's dictate that individuals need not "engage in a futile gesture" to bring a claim.  *Id.* (quoting 42 U.S.C. § 12188(a)(1)).  "[A] disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the ADA violation] affects his activities in some concrete way."  *Frame*, 657 F.3d at 236.

Accordingly, under this "deterrent effect theory," Crider "can establish standing by showing that [he] knows that the public accommodation is noncompliant and that [he] would visit that accommodation were it compliant."  *Hunter*, 2013 WL 4052411, at *3.  But because this approach still requires the plaintiff to show that he intends to return to the Property, the same factors discussed above in the context of the "intent to return" approach are relevant to this analysis as well.  *Id.*

B

1

The first relevant factor is the Property's proximity to Crider's residence.  In several cases, courts have held that 30 miles is a sensible distance between the plaintiff's residence and the subject property.  *See, e.g.*, *Castillo v. Sanchez*, 2022 WL 17491313, at *1 (W.D. Tex. Dec. 6, 2022); *Lambert v. Am. Pizza Partners LP*, 2023 WL 2776774, at *3 (W.D. Tex. Mar. 15, 2023).  Distances up to 50 miles have been deemed adequate to support a plaintiff's standing.  *Gilkerson v. Chasewood Bank*, 1 F.Supp.3d 570, 592 (S.D. Tex. 2014).  On the other hand, plaintiffs who reside more than 50 miles from the defendant's property have generally lacked standing to bring suit.  *See Davis v. Am. Nat'l Bank of Tex.*, 2012 WL

7801700, at *6 (E.D. Tex. Dec. 11, 2012) (collecting cases); *see also Delil v. El Torito Rests., Inc.*, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997).

The FAC alleges that Crider intends to return to the Property in part because it is relatively close to his residence and is located in an area through which he frequently travels. The FAC asserts that the Property is "within thirty (30) miles" of his home. FAC ¶ 10. This 30-mile distance is not unreasonable, and, as discussed above, has been deemed persuasive on the issue of standing in prior cases. *See Castillo*, 2022 WL 17491313, at *1; *Lambert*, 2023 WL 2776774, at *3. Similarly, here, the first factor weighs in favor of concluding that Crider has standing.

2

The second consideration is whether, and the extent to which, Crider has patronized the Property in the past. *See Hunter*, 2013 WL 4052411, at *3. The FAC alleges that Crider "visited, i.e. patronized or attempted to patronize, the Subject Property on multiple prior occasions." FAC ¶ 15. This fact, and the fact that Crider returned to the Property for a second time after he filed his complaint but before he filed his FAC, suggest an intent to return to the Property.

3

The third factor of the intent to return analysis is the definitiveness of Crider's future plans to visit the Property. *See Hunter*, 2013 WL 4052411, at *3. This factor requires something more than the "someday" intentions that courts have routinely deemed inadequate. *See, e.g.*, *Access 4 All, Inc. v. Wintergreen Com. P'ship, Ltd.*, 2005 WL 2989307, at *3 (N.D.

- 11 -

Tex. Nov. 7, 2005) (Fish, C.J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). But "what constitutes a sufficiently concrete plan to return must be evaluated in context." *Hunter*, 2013 WL 4052411, at *4. For example, "[v]isiting a fast food restaurant, as opposed to a hotel or professional office, is not the sort of event that requires advance planning or the need for a reservation …. [S]pecification as to a date and time of returning to this public accommodation is impossible due to the nature of the event." *Parr v. L & L Drive-Inn Rest.*, 96 F.Supp.2d 1065, 1079 (D. Haw. 2000); *see also Hunter*, 2013 WL 4052411, at *4 (concluding that reservations and specific dates and times of return visits were not required when the allegedly infringing accommodation was an ATM).

Crider maintains that he has future plans to visit the Property in order to "be a regular patron … and to determine if and when the Subject Property is made accessible." FAC ¶ 15. Visiting a convenience store or similar business requires no reservations and typically occurs without much forethought. In this respect, it is more similar to a fast food restaurant or an ATM than it is to a hotel or professional office. *See Parr*, 96 F.Supp.2d at 1079. Crider's assertions that he intends to return in the future—specifically, within six months—therefore constitute definitive plans to return. And Crider notes that such plans are, by necessity, conditioned on the removal of the physical barriers identified in his FAC, making it difficult to pinpoint a specific date on which his next visit will occur.[5] Accordingly, Crider has

---

[5]Crider's statements to this effect comport with the purpose of the ADA generally, because a disabled person need not "engage in a futile gesture." 42 U.S.C. § 12188(a)(1). These allegations would also support a determination that Crider has standing under the deterrent effect theory of injury in fact, but the court does not reach this issue. *See infra* §

established that he intends to return to the Property in the future, and this supports the finding that he has standing.

4

The fourth factor is the frequency with which Crider travels near the Property. *Id.* The FAC alleges that Crider routinely travels in the area where the Property is located and that he "is located and travels in and about the immediate area of the Subject Property numerous times every month, if not every week." FAC ¶ 10. These allegations permit the court to draw the reasonable inference that future visits are likely to occur.

5

Some courts consider a plaintiff's prior litigation history. Foust points out that Crider (or, more accurately, his attorney) has brought a number of virtually identical suits against other local business owners alleging violations of the ADA. Each complaint is practically indistinguishable from the other.

An extensive history of bringing ADA claims is relevant to the standing inquiry because it can "undercut [a plaintiff's] attempt to prove an intent to return." *Hunter*, 2013 WL 4052411, at *2; *see also Norkunas v. Wynn Resorts Holdings, LLC*, 2007 WL 2949569, at *4 (D. Nev. Oct. 10, 2007). But it is not automatically fatal to a plaintiff's case. *See, e.g.*, *Gilkerson*, 1 F.Supp.3d at 576 (concluding that the plaintiff had standing despite the fact that she had filed "twenty-four virtually identical class action lawsuits against various financial

_____

IV(B)(6).

institutions under Title III of the ADA").

"Litigation history is relevant and undermines credibility *if* the statements made in other cases undermine the credibility of statements made in the instant case." *Hunter*, 2013 WL 4052411, at *5 (emphasis added).  For example, if Crider had alleged his intent to return to the properties involved in his other ADA cases, but there was evidence that he never did, this could undermine the credibility of his allegations in the present case.  *See id*.

The record does not appear to contain evidence that Crider acted contrary to his alleged intentions to return to the businesses involved in the other suits.  Crider's litigation history in fact weighs neither in favor of nor against concluding that he has standing to bring the instant suit.

This conclusion is bolstered by the fact that several courts have held that a self-proclaimed ADA "tester"—an individual whose "goal is to *test* the accommodation to determine *if* it is accessible"—can have standing, so long as he intends to return to a business "both to visit it and to test ADA compliance." *Hunter*, 2013 WL 4052411, at *5 n.8 (citing *Access 4 All, Inc. v. Absecon Hosp. Corp.*, 2006 WL 3109966, at *7 (D.N.J. Oct. 30, 2006)). Neither Crider nor Foust characterizes Crider as a "tester," but Crider does allege in his FAC that he intends to revisit the Property both to patronize it and to "determine if and when [it] is made accessible."  FAC ¶ 15.  The fact that ADA "testers" can nevertheless have standing to bring a claim supports the conclusion that Crider can as well, despite his litigation history and his mixed motives in returning to the Property.

- 14 -

6

The court therefore holds that, assuming that the material parts of Crider's verified complaint are based on personal knowledge, he has established that he has standing to bring this lawsuit under the intent to return theory of injury in fact.[6]  His intentions to return are sufficiently definite given that the Property is a retail food establishment that requires no advance notice to patronize.  Crider maintains that he has visited (or attempted to visit) the Property in the past, lives within a reasonable distance of the Property, and frequents the area directly surrounding the Property.  His litigation history does not undercut this conclusion.

C

Finally, as Foust correctly notes, separate and apart from the two tests identified above, a plaintiff must allege "in detail" the impact that a purported ADA violation has on his day-to-day life.  *See Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 174 (5th Cir. 2018).  Crider has done so.  The FAC alleges that Crider is currently unable to visit the Property, but that he would like to do so to "purchase donuts and other breakfast food items, use the bathroom, purchase other convenience items, and also purchase general goods and services of the type that would be purchased by any other person in their daily life."  FAC ¶ 15.  He also maintains that "his fundamental right to patronize any place of public accommodation at his choosing has been diminished by Defendant's non-compliance with the ADA."  *Id.* at ¶ 19.

---

[6]Because the court concludes that Crider has established standing under the intent to return theory, it need not discuss the deterrent effect theory.

- 15 -

D

Accordingly, assuming that Crider cures the personal-knowledge defect in the FAC, he has established that he has standing.

V

The court grants Crider leave to file a second amended complaint that is based on an acceptable verification, such as on oath or penalty of perjury, and that specifies the parts that are based on his personal knowledge.  This pleading must be filed within 28 days of the date this memorandum opinion and order is filed.

*   *   *

For the reasons explained, the court denies Foust's Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the condition that Crider complies with § V of this memorandum opinion and order.

**SO ORDERED**.

May 1, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 16 -